**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **KATHY J. THORNTON-MATLOCK,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No. 08-CV-632-TLW |
| | ) |
| **MICHAEL J. ASTRUE, Commissioner of the** | ) |
| **Social Security Administration,** | ) |
| | ) |
| **Defendant.** | ) |

## OPINION AND ORDER

Claimant, Kathy J. Thornton-Matlock ("Matlock"), pursuant to 42 U.S.C. § 405(g), requests judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying Matlock's application for disability benefits under the Social Security Act. In accordance with 28 U.S.C. § 636(c)(1) and (3), the parties have consented to proceed before a United States Magistrate Judge. Any appeal of this order will be directly to the Tenth Circuit Court of Appeals. Matlock appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Matlock was not disabled. For the reasons discussed below, the Court **AFFIRMS** the Commissioner's decision.

### Claimant's Background

At the time of the hearing before the ALJ on March 18, 2008, Matlock testified that the primary reason that she could not work was anxiety. (R. 221-22). She had a tenth grade education, she never received a GED, and she had attended special education classes in school. (R. 239). She described a work attempt in the year before the hearing that lasted a month and that stopped because she sprained her ankle. (R. 222-23). The work attempt was job cleaning and doing dishes, and she felt anxiety being around people. (R. 225-26). She had previously had medications for her anxiety

1

prescribed by the Mays County Medical Center. (R. 223). Her boyfriend helped her pay for those prescriptions, but she was unable to refill them. (R. 223-24).

Matlock's testimony was that anxiety first became a problem when she was in the Grand Lakes Stabilization Unit and she had a bad reaction to the antidepressant Paxil. *Id.* She went to the Grand Lakes Stabilization Unit due to depression and suicidal thoughts that had been a problem for about a year at that time. (R. 225).

Matlock testified to problems sleeping, stating that she got three hours sleep on a good night. (R. 226-27). She testified that she had panic attacks most days. (R. 229). She also had crying spells. (R. 230-31). She missed her children, who lived with their father and stepmother. (R. 231).

She testified that she had individual counseling for the three weeks before the hearing, and she was scheduled for an intake evaluation. (R. 236).

She testified that she often had kidney infections. (R. 237).

Documents show that Matlock presented to Grand Lake Mental Health Center on January 20, 2005 with depression but was found to be ineligible to receive services. (R. 95-98).

Non-examining agency consultant Laura Lochner, Ph.D. completed a Psychiatric Review Technique form dated July 22, 2005, indicating that there was insufficient evidence of any psychiatric impairments. (R. 99-111).

Matlock was seen at the Mayes County Medical Center on August 11, 2006 for depression. (R. 176-81). She was transferred to the Grand Lake Mental Health Stabilization Center where she was admitted to in-patient treatment on August 12, 2006 and discharged August 22, 2006. (R. 112-29). According to the discharge plan and summary, Matlock presented with suicidal ideation. (R.

112). The admission diagnosis on Axis I[1] was depressive disorder not otherwise specified, and her global assessment of functioning ("GAF") was scored as 18 current, with 50 as the highest during the past year. (R. 113). On discharge, the Axis I diagnosis was major depressive disorder single severe without psychotic features, and her GAF appears to have been reported as the same: "18/50." *Id.*

Matlock was treated at the Mayes County Medical Center Emergency Department on March 3, 2005 for a sore throat and fever, and she was diagnosed with sinusitis. (R. 197-202). On October 28, 2005, she presented with low back pain, but was diagnosed with a urinary tract infection. (R. 190-96). On February 26, 2006, and January 20, 2007, Matlock was again diagnosed with urinary tract infections. (R. 170-75, 182-89). She was treated on April 25, 2007 for an ankle injury. (R. 164-69). She presented on July 31, 2007, and was diagnosed with bronchitis and constipation. (R. 159-63). On December 22, 2007, she presented complaining of a panic attack and was diagnosed with anxiety. (R. 211-15). It appears that she was prescribed Celexa and Ativan. (R. 212-13).

In 2006, Matlock received women's health services at Women's Health Center of Pryor. (R. 204-09).

Matlock was examined by agency consultant Ravinder R. Kurella, M.D. on October 28, 2006. (R. 131-37). Matlock described a history of pyelonephritis on the right side as a child, with recurrent episodes of bladder and kidney infections. (R. 131). She also recounted her hospitalization at Grand Lake Mental Health Stabilization Center and a history of nervousness and anxiety. *Id.* She said she had low back pain that was a "2" on a scale of 1 to 10 on the day of the examination, but that was

---

[1] The multiaxial system "facilitates comprehensive and systematic evaluation." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 27 (Text Revision 4th ed. 2000).

3

sometimes as intense as a "6." *Id.* Dr. Kurella's examination showed normal range of motion and gait. (R. 133).

Matlock was seen by agency consultant Melinda A. Shaver, Psy. D. on January 24, 2007. (R. 138-42). Dr. Shaver noted that Matlock was not always cooperative and appeared at times to exaggerate her symptoms. (R. 138). Dr. Shaver's diagnosis was major depressive disorder, single episode, and she assessed Matlock's GAF as 68. (R. 141). In her opinion, Matlock's prognosis was good, and the depression she had previously experienced appeared to be situational. *Id.* Dr. Shaver believed that Matlock's intelligence was below average, and that she was likely in need of occupational rehabilitation. *Id.* She found that Matlock was not able to manage benefits in her interest. (R. 142).

Burnard L. Pearce, Ph.D., an agency non-examining consultant, completed a Psychiatric Review Technique form dated February 1, 2007, finding that Matlock's mental impairments were not severe. (R. 143-56). For Listing 12.04, Dr. Pearce stated Matlock's impairment as situational depression. (R. 146). For the "Paragraph B Criteria,"[2] Dr. Pearce indicated that Matlock had mild restrictions of her activities of daily living, her ability to maintain social functioning, and her ability to maintain concentration, persistence, or pace. (R. 153). Dr. Pearce found one or two episodes of decompensation. *Id.* In the consultant's notes portion of the form, Dr. Pearce cited to Dr. Shaver's report in concluding that Matlock's depression was situational. (R. 155).

---

[2] There are broad categories known as the "Paragraph B Criteria" of the Listing of Impairments used to assess the severity of a mental impairment. The four categories are (1) restriction of activities of daily living, (2) difficulties in maintaining social functioning, (3) difficulties in maintaining concentration, persistence or pace, and (4) repeated episodes of decompensation, each of extended duration. Social Security Ruling ("SSR") 96-8p; 20 C.F.R. Part 404 Subpt P, App. 1 ("Listings") §12.00C. *See also Carpenter v. Astrue*, 537 F.3d 1264, 1268-69 (10th Cir. 2008).

**Procedural History**

On February 15, 2005, Matlock filed an application for supplemental security income under Title XVI, 42 U.S.C. § 401 *et seq.* (R. 46-47). Matlock's application was denied in its entirety initially and on reconsideration. (R. 32-34, 36-39). A hearing before ALJ John Volz was held March 18, 2008 in Tulsa, Oklahoma. (R. 216-51). By decision dated May 1, 2008, the ALJ found that Matlock was not disabled at any time through the date of the decision. (R. 11-18). On August 28, 2008, the Appeals Council denied review of the ALJ's findings. (R. 3-5). Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. § 416.1481.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Act only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. § 416.920.[3] *See also Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988) (detailing steps). "If a

---

[3] Step One requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. § 416.920. Step Two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. *See* 20 C.F.R. § 416.920(c). If the claimant is engaged in substantial gainful activity (Step One) or if the claimant's impairment is not medically severe (Step Two), disability benefits are denied. At Step Three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App.1 ("Listings"). A claimant suffering from a listed impairment or impairments

5

determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams*, 844 F.2d at 750.

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (quotation omitted).

Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* The court's review is based on the record taken as a whole, and the court will "meticulously examine the record in order to determine if the evidence supporting the agency's decision is substantial, taking 'into account whatever in the record fairly detracts from its weight.'" *Id., quoting Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). The court "may neither reweigh the evidence nor substitute" its discretion for that of the Commissioner. *Hamlin,* 365 F.3d at 1214 (quotation omitted).

**Decision of the Administrative Law Judge**

At Step One, the ALJ found that Matlock had not engaged in any substantial gainful activity since her application date of February 8, 2005. (R. 13). At Step Two, the ALJ found that Matlock had severe impairments of "Depressive Disorder Single Severe without Psychotic Features and a

---

"medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to Step Four, where the claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's Step Four burden is met, the burden shifts to the Commissioner to establish at Step Five that work exists in significant numbers in the national economy which the claimant, taking into account his age, education, work experience, and RFC, can perform. *See Dikeman v. Halter*, 245 F.3d 1182, 1184 (10th Cir. 2001). Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. 20 C.F.R. § 416.920.

history of recurrent bladder and kidney infections." *Id.* The ALJ discussed Matlock's complaints of anxiety and low back and knee pain. *Id.* He concluded that these conditions were not supported by the medical records and could not be recognized as severe impairments. *Id.* At Step Three, the ALJ found that Matlock's impairments did not meet any Listing. (R. 14).

The ALJ determined that Matlock had the RFC to do light work "except she cannot interact with the general public." *Id.* At Step Four, the ALJ found that Matlock could not return to past work. (R. 17). At Step Five, the ALJ found that there were jobs that a person with Matlock's RFC could perform. *Id.* Therefore, the ALJ found that Matlock was not disabled at any time through the date of his decision. (R. 18).

## Review

Matlock asserts that the ALJ erred in his development of the record, in his assessment of Matlock's credibility, and, at Step Five, in his hypothetical to the vocational expert (the "VE"), the number of jobs found, and in his duty to inquire regarding whether the VE's testimony was consistent with the Dictionary of Occupational Titles (the "DOT"). Because the ALJ's decision was supported by substantial evidence and was in compliance with applicable legal principles, the decision is affirmed.

### Duty to Develop

Matlock asserts that the ALJ failed in his duty to develop the record by failing to obtain records of Matlock's treatment by Dr. Joy. Plaintiff's Opening Brief, (Dkt. #16 at 7). In a somewhat confusing argument in this section, Matlock appears to state that the ALJ did not discuss evidence of thigh atrophy, without explaining any assertion that the ALJ had failed to develop evidence in regard to this issue. *Id.* Matlock then states that some records are "incomplete" regarding Matlock's 2006 hospitalization, without indicating what is incomplete about those records. *Id.* Finally,

7

Matlock makes the argument that her counsel presented at the hearing before the ALJ regarding a request for further mental testing. *Id.* at 8. The undersigned finds none of these arguments persuasive.

In 2007, the Tenth Circuit addressed the duty of an ALJ to develop the record in *Flaherty v. Astrue*, 515 F.3d 1067, 1071-72 (10th Cir. 2007). The Tenth Circuit recited the oft-stated principle that a social security hearing is not adversarial, and that the ALJ is responsible to make sure that the record is adequately developed, depending on the issues raised. *Id., citing Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997).

Many Tenth Circuit cases comment on the significance of the presence of counsel for the claimant at the hearing before the ALJ, if the counsel did not assert at the hearing that there was a need for further development. *See Cowan v. Astrue*, 552 F.3d 1182, 1188 (10th Cir. 2008); *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008); *Branum v. Barnhart*, 385 F.3d 1268, 1271 (10th Cir. 2004); *Hawkins*, 113 F.3d at 1167-68. In the present case, Matlock was represented by counsel at the hearing. Matlock's counsel made an argument that the consultative report of Dr. Shaver was not adequate and that an additional mental examination should be ordered. (R. 219-20, 231-32, 241-43). The ALJ rejected that argument at the time of the hearing, stating that Dr. Shaver's examination was just over a year old and that it appeared comprehensive. *Id.*

The undersigned agrees with the reasoning of the ALJ that no further examinations of Matlock were required. *Hawkins*, 113 at 1166. In *Hawkins*, the Tenth Circuit explained that the Commissioner has broad latitude in ordering consultative examinations and that initial consultative examinations could be required when there is a direct conflict in the medical evidence, the medical evidence is inconclusive, or where additional tests are needed to explain a diagnosis already contained in the record. *Id.* None of these situations was present in the instant case, and the

8

undersigned is aware of no authority requiring the Commissioner to order a second consultative examination. *See Sneed v. Barnhart*, 88 Fed. Appx. 297, 299-301 (10th Cir. 2004) (unpublished) (ALJ did not err in failing to purchase additional consultative examination for intelligence testing when the record contained sufficient evidence to evaluate the claimant's mental impairments).

Matlock's attorney did not present any arguments at the hearing regarding the records of Dr. Joy, any asserted thigh atrophy, or incomplete records of Matlock's 2006 hospitalization. Matlock's attorney did request time to attempt to obtain additional medical records of Matlock from Grand Lake Mental Health Center, and the ALJ kept the record open for two weeks. (R. 243, 251). There is no indication that any additional records were submitted after the hearing. The presence of counsel at the hearing, with no suggestion that there should be further development of the record, is additional indication that further development was not required. *Cowan*, 552 F.3d at 1188 (ALJ may ordinarily require counsel to identify issues requiring further development) (quotations omitted). The failure of Matlock's counsel at the hearing to request any further development regarding the records of Dr. Joy, thigh atrophy, or Matlock's 2006 hospitalization is significant, and this Court will not find in these circumstances that the ALJ had any further duty to develop the records regarding these subjects. Additionally, regarding the alleged thigh atrophy,[4] Matlock did not give any testimony at the hearing that her legs were a cause of disability. Given this lack of any indication that Matlock was making a claim that her legs were a source of disability, it is understandable that the ALJ would not have discussed this alleged condition. *See Zumwalt v. Astrue*, 220 Fed. Appx. 770, 776-77 (10th Cir. 2007) (unpublished) (waiver principles apply in Social Security disability).

---

[4] Matlock cites to circumference measurements made by Dr. Kurella. (R. 136). Dr. Kurella apparently did not find any significance to these measurements, and he did not include any diagnosis of atrophy in his report.

9

**Credibility Determination**

Matlock raises several complaints regarding the ALJ's credibility analysis, but the undersigned concludes that the ALJ's discussion and analysis in his decision were adequate. Credibility determinations by the trier of fact are given great deference. *Hamilton v. Secretary of Health & Human Services,* 961 F.2d 1495, 1499 (10th Cir. 1992).

> The ALJ enjoys an institutional advantage in making [credibility determinations]. Not only does an ALJ see far more social security cases than do appellate judges, [the ALJ] is uniquely able to observe the demeanor and gauge the physical abilities of the claimant in a direct and unmediated fashion.

*White,* 287 F.3d at 910. In evaluating credibility, an ALJ must give specific reasons that are closely linked to substantial evidence. *See Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995); Social Security Ruling 96-7p, 1996 WL 374186.

The ALJ gave several specific reasons for his finding that Matlock lacked credibility. First, at Step Two, he rejected Matlock's claims regarding anxiety, low back pain, and knee pain, due to the absence of medical evidence substantiating those conditions. (R. 13). He noted that Dr. Shaver found Matlock's depression to be situational and found her prognosis to be good. (R. 16). He noted that Matlock's testimony regarding her use of alcohol was not consistent.[5] *Id.* He noted that her complaints regarding back pain were inconsistent with the results of Dr. Kurella's examination. *Id.* He noted that Matlock could do cleaning, cooking, and grocery shopping, and that these activities were inconsistent with her allegation that she could only walk one-half of a block. *Id.* The Court

---

[5]   In Plaintiff's Opening Brief, Dkt. #16, p.5, Matlock's attorneys object to the inclusion of the following sentence in the ALJ's credibility assessment as "hitting below the belt": "Further, the undersigned is not persuaded that the claimant's living with an alcoholic boy friend has resulted in her becoming a teetotaler." (R. 16). The Court believes that this sentence was an elaboration on the ALJ's explanation regarding Matlock's inconsistent statements regarding her alcohol use.

disagrees with the assertion made by Matlock that the ALJ's conclusion was "unfavored speculation," and agrees with the ALJ that Matlock's extreme claim regarding her inability to walk, when contrasted with her reported activities, undermined her credibility. The ALJ's credibility determination was therefore supported by specific reasons linked to substantial evidence, and it is affirmed.

**Step Five**

<u>Hypothetical Propounded to the Vocational Expert</u>

At Step Five of the sequential evaluation process, the burden is on the Commissioner to show that work exists in significant numbers in the regional and national economies which the claimant can perform, taking into account the claimant's age, education, work experience and RFC. *See Dikeman*, 245 F.3d at 1184; *Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir. 1999). When a claimant's RFC is diminished by both exertional and nonexertional impairments, the Commissioner must produce expert vocational testimony to establish the existence of jobs in the national economy that the claimant can perform. *Hargis v. Sullivan*, 945 F.2d 1482, 1491 (10th Cir. 1991). For the VE's testimony to constitute substantial evidence, the ALJ's hypothetical question to the VE must relate with precision all of the claimant's limitations. *Hargis* at 1492.

In the present case, the ALJ determined that Matlock had the RFC to perform light work "except she cannot interact with the general public." (R. 14). The hypothetical he propounded to the VE does not match exactly this RFC determination:

> What about if we, if we give you a hypothetical claimant and this claimant's age, we could do a moderate exertional level of work, relatively simple, simple work without direct interrelationships with the general public.

(R. 245). While Matlock complains that this hypothetical was imprecise and could have allowed the VE to respond "with nearly any kind of job without regarding to any significant strength limitations,"

11

Plaintiff's Opening Brief, (Dkt. #16 at 2), Matlock concedes, as she must, that the VE responded with light and sedentary jobs. All of those jobs were within the RFC as determined in the ALJ's decision, and, therefore, there appears to be no harm to Matlock resulting from the ALJ's use of the word "moderate" instead of using the word "light."[6]

Here, the undersigned is convinced that the testimony of the VE constitutes substantial evidence, and any error in the way that the ALJ presented the hypothetical questions to the VE was harmless error. The Tenth Circuit discussed the concept of harmless error in the context of social security disability appeals in *Fischer-Ross v. Barnhart*, 431 F.3d 729 (10th Cir. 2005). In *Fischer-Ross*, the ALJ had failed to include any facts or analysis in Step Three, but had only included the statement that "a review of the medical evidence fails to reveal the existence of an impairment or combination of impairments which specifically meets or equals the criteria" of any listing. *Id.* at 731-32. The district court held that this was reversible error because the court could not adequately review the bare conclusion. The district court went on, however, to uphold the ALJ's determination at Steps Four and Five that the claimant's RFC allowed her to perform a significant number of occupations. *Id.* at 732. The Tenth Circuit in *Fischer-Ross* found that the ALJ's specific findings at those steps contradicted a conclusion that the claimant's problems could meet the severity required to be conclusively presumed disabled under any of the pertinent listings. *Id.* at 734-35. The Tenth Circuit's summation gave a concise explanation of the concept of harmless error:

> In sum, the ALJ's confirmed finding at steps four and five of his analysis, coupled

---

[6] Matlock makes a brief reference to the failure of the hypothetical to include postural limitations. Plaintiff's Opening Brief, (Dkt. #16 at 2). Matlock did not object to the ALJ's RFC formulation, however, and therefore any argument regarding postural limitations was waived. *See Wall v. Astrue*, 361 F.3d 1048, 1066 (10th Cir. 2009) (perfunctory presentation of argument by claimant deprived the district court of the opportunity to analyze and rule on issue).

> with indisputable aspects of the medical record, conclusively preclude Claimant's qualification under the listings at step three. No reasonable factfinder could conclude otherwise. Thus, any deficiency in the ALJ's articulation of his reasoning to support his step three determination is harmless.

*Id.* at 735.

Here, the deficiencies in the ALJ's articulation of the hypothetical to the VE were harmless because the VE testified to light and sedentary jobs, and that testimony was consistent with the ALJ's RFC determination of light work. Given the testimony of the VE, no reasonable factfinder could find that there was not substantial evidence that jobs were available for a person with the ultimate RFC determined by the ALJ and included in his decision. Therefore, the errors of the ALJ in how the testimony was elicited and in the imprecision of his language were harmless. *See also Seever v. Barnhart*, 188 Fed. Appx. 747, 752 (10th Cir. 2006) (unpublished) (harmless error when VE's testimony regarding jobs included a limitation relating to job pressures, but ALJ's decision did not include the job pressures limitation); *Stokes v. Astrue*, 274 Fed. Appx. 675, 683-84 (10th Cir. 2008) (unpublished) (ALJ's inclusion of jobs with high noise levels at Step Five of his decision when the claimant had a limitation to exposure to noise was harmless error when no reasonable factfinder could have determined that there were not jobs in significant numbers within the claimant's RFC).

<u>Significant Number of Jobs</u>

In addition to her argument regarding the imprecise nature of the hypothetical propounded to the VE, Matlock also asserts inadequacy in the VE's testimony regarding numbers of jobs. While Matlock asserts that the VE gave her testimony regarding numbers of jobs in "broad categories" of jobs, a review of her testimony does not support this assertion:

> There are 189,000 of those office-cleaning jobs in the national economy and 20,000 in this region of Texas, Oklahoma, Arkansas, and Louisiana. And the DOT number would be 323.687-014. And another job would be food preparation jobs and by that I mean like salad prep, setting up and there are 450,000 of those in the national

>economy and 55,000 in this region. And a DOT number would be 319.474-010. And then there's always sedentary assembly work. There's 167,000 in the nation and 20,000 in the region. And a DOT number would be 726.684-110.

(R. 245). The citation to a specific DOT number appears to indicate that the VE's testimony related to one specific job.

Matlock argues that the jobs cited by the VE in the region are not sufficient to avoid the analysis required of the ALJ pursuant to *Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1999). In *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004), the Tenth Circuit discussed *Trimiar* and said that a job with approximately 650-900 available statewide was in a gray area that required the ALJ to specifically address whether those numbers are sufficient, and therefore the court reversed in *Allen* when the number was only 100. Matlock asserts that, because the VE stated the numbers regionally, rather than in the State of Oklahoma, there is no way to know if the numbers were sufficient to meet the threshold to avoid the more specific analysis required by *Trimiar*. The undersigned finds that the testimony of the VE regarding numbers of jobs was adequate, and that the total of 95,000 jobs in the region to which the VE testified was not in the "gray area" described the Tenth Circuit in *Trimiar* and *Allen*.

<u>Consistency with DOT</u>

A further argument at Step Five is that the ALJ failed to ask the VE if his testimony was consistent with the DOT, even though the ALJ's decision recited that the testimony was consistent. Plaintiff's Opening Brief, (Dkt. #16 at 3). The undersigned agrees that he was not able to find this specific testimony by the VE, and therefore it was error for the ALJ to include a conclusion in his decision that was not supported by substantial evidence. However, this too is harmless error, as explained by the Tenth Circuit in *Martinez v. Astrue*, 316 Fed. Appx. 819, 825-26 (10th Cir. 2009). In *Martinez*, as in the present case, the ALJ had failed to ask the VE if his opinion was consistent

14

with the DOT, as required. The Tenth Circuit said that the claimant had not identified any conflict and so the court considered the ALJ's failure to be harmless. *Id.* at 826.

Here, the VE specifically identified the jobs by DOT number. Matlock has a legitimate complaint regarding the job that the VE described as a salad preparation job, because apparently the identified DOT number relates to a fountain server job. Plaintiff's Opening Brief, (Dkt. #16-2, Exhibit A). Matlock states that her RFC is inconsistent with the DOT description of this fountain server job. While the Commissioner urges that the VE mistakenly gave the wrong DOT number and provides a new one, the Court cannot assume that the VE's testimony related to this new DOT number.

The Court nevertheless finds the mistake made by the VE in her testimony in her identification of the DOT number corresponding to the salad preparation job was not fatal to the ALJ's decision at Step Five. The error only affected that one job, and Matlock has not asserted that there were any inconsistencies with the DOT regarding the office cleaning job or assembly job cited by the VE. Even with the exclusion of the salad preparation job, the VE testified to 40,000 jobs in the region. The Court again finds that this reduced number of 40,000 does not fall into the gray area described in *Trimiar* and *Allen*. Therefore, the ALJ's Step Five findings were supported by substantial evidence, and the ALJ's decision is affirmed.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. The decision is **AFFIRMED**.

Dated this 25th day of March, 2010.

_____
T. Lane Wilson
United States Magistrate Judge